**Brian C. Hickman, OSB No. 031096**
Email: bhickman@gordon-polscer.com
**Joshua E. Tabak, OSB No. 214668**
Email: jtabak@gordon-polscer.com
**GORDON & POLSCER, L.L.C.**
9020 SW Washington Square Road
Suite 560
Tigard, Oregon 97223
Telephone:   (503) 242-2922
Facsimile:   (503) 242-1264

*Attorneys for Plaintiff*
*Penn-Star Insurance Company*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>ACTIVE PROPERTY SERVICE, MATTHEW FITZSIMMONS, TARA C. BLACK, and JOHN DOES I-IV,<br><br>  Defendants. | Case No. 1:22-cv-01706<br><br>COMPLAINT<br><br>DECLARATORY RELIEF<br>28 U.S.C. § 2201 |

COMES NOW the Plaintiff, Penn-Star Insurance Company ("Penn-Star") by and through its attorneys of record, Gordon & Polscer, L.L.C., and as a Complaint against Defendants states as follows:

/ / /

/ / /

/ / /

## PARTIES AND JURISDICTION

1.

Plaintiff Penn-Star is a company organized under the laws of the State of Pennsylvania, with its principal place of business in Bala Cynwyd, Pennsylvania.

2.

Upon information and belief, Active Property Service ("Active Property") is an Oregon entity with its principal place of business in Medford, Oregon.

3.

Upon information and belief, Matthew Fitzsimmons ("Fitzsimmons") is an owner, if not the sole owner, of Active Property. Upon information and belief, Fitzsimmons is a citizen of Oregon.

4.

Upon information and belief, Tara C. Black is an individual residing in Spokane Washington, who at all material times resided in Jackson County, Oregon.

5.

Upon information and belief, John Does I-IV ("John Does") are persons who are part of the ownership and decision-making process with respect to the property located at 1115 ½ Pinecroft Avenue, and/or the decision-making process for Active Property. Upon information and belief, John Does are citizens of Oregon.

6.

Defendants Active Property, Fitzsimmons, and John Does will be referred to collectively hereafter as "Defendants."

7.

Jurisdiction of this court is proper pursuant to 28 U.S.C. § 1332 given the diversity of citizenship of the parties and because the amount in controversy exceeds the statutory minimum of $75,000 in 28 U.S.C. § 1332.

8.

A present and actual controversy exists regarding Penn-Star's obligations to Defendants pursuant to the applicable Penn-Star Commercial General Liability Policy under which Defendants might qualify as insureds. Due to the nature of the alleged loss, it is unclear which year's policy might apply. Therefore, out of an abundance of caution, each potentially applicable policy from 2011 through 2023 (hereinafter, the "Policies") has been reviewed and analyzed in a light most favorable to defendants[1]. Notably, the provisions on which Penn-Star relies in this complaint are consistent and identical throughout each of these Policies. These Policies are attached, in relevant part and in chronological order, as Exhibits 1-12. Penn-Star seeks and is entitled to a declaration of the rights of the parties pursuant to FRCP 57 and 28 U.S.C. § 2201.

9.

Jurisdiction and venue are proper in the U.S. District Court, District of Oregon, Medford Division because Active Property's principal place of business is in Jackson County, Oregon; the underlying claims concern a property located in Jackson County; Defendants are parties to a lawsuit pending in Jackson County Circuit Court; and the Policies were obtained in Oregon, for an Oregon business.

**FACTUAL BACKGROUND**

10.

On or about September 23, 2022, Tara C. Black ("Underlying Plaintiff") filed a Complaint ("Underlying Complaint") in the Circuit Court for the State of Oregon for the County of Jackson, Case No. 22CV32555 ("the Underlying Lawsuit"), against Active Property Service, John Does I-IV (owners of Active Property Service), Matthew Fitzsimmons, and Michael

---

[1] The policy numbers for each potentially applicable policy are as follows: 2011-2012: PAC6893027; 2012-2013: PAC6921396; 2013-2014: PAC7013455; 2014-2015: PAC7056052; 2015-2016: PAC7076728; 2016-2017: PAC7102896; 2017-2018: PAC7129414; 2018-2019: PAC7150744; 2019-2020: PAC7171082; 2020-2021: PAC7191763; 2021-2022: PAC7210011; 2022-2023: PAV0353369.

Dehaas. The Underlying Complaint asserts claims against each of these parties for breach of statutory duty and breach of common-law duty, based on their alleged failure to inspect or remedy the mold growth at Underlying Plaintiff's property, and that this long-term mold exposure resulted in bodily injury, emotional injury, and property damage. Underlying Plaintiff alleges that she has sustained damages in an amount of $915,753.89 and seeks such damages as well as her attorney fees and costs. A copy of the Underlying Complaint is attached hereto as Exhibit 13.

11.

The Policies provide insurance, subject to the terms, conditions, limitations, endorsements and exclusions contained in the Policies, including the following provisions:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily

injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

- **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
- **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

"Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

\*\*\*

/ / /

/ / /

/ / /

/ / /

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

    **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of

any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

  **C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\*\*\*

12.

Penn-Star has agreed to defend Defendants against the Underlying Complaint, subject to a reservation of rights.

13.

A dispute exists between Penn-Star and Defendants concerning the scope and extent of Penn-Star's duty to defend against the Underlying Complaint.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment –No Duty to Defend)

14.

Penn-Star incorporates by reference the allegations in paragraphs 1-13.

15.

An actual controversy and dispute exists between Penn-Star and Defendants as to whether Penn-Star is relieved of its obligation to provide a defense to Defendants against the claims in the Underlying Lawsuit pursuant to the "Fungi or Bacteria" Exclusion of the Policies.

16.

Each of the Policies issued to Defendants between 2011 and the present explicitly states that "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily

injury' or 'property damage' to which this insurance does not apply." Further, each of the Policies issued to Defendants between 2011 and the present explicitly states that it does not apply to:

> "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

17.

The injuries and damages alleged in the Underlying Complaint arise entirely out of Underlying Plaintiff's exposure to mold, which is considered a "fungi" under the Policies.

18.

While there is some reference to "water intrusion" in the Underlying Complaint, it is not alleged that this occurrence led to "bodily injury" or "property damage." Even if this were alleged, it is clearly not alleged that these injuries would have occurred "but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of" any mold. The water intrusion is only mentioned in order to establish Defendant's alleged negligence in failing to remedy the situation before it became dangerous or harmful (i.e., when the mold appeared), but there is no allegation that the water intrusion alone was harmful to Underlying Plaintiff's body or property.

19.

The allegations of the Underlying Complaint will not be reproduced in their entirety. However, the following paragraphs, quoted in relevant part, clearly establish that "bodily injury" and "property damage" are alleged due to exposure to a "fungi," and that such damages would not have occurred but for such occurrences:

(a) Paragraph 2.11: "Plaintiff knew of the moisture and the smell, but at that point had no idea, and no reason to know of the severity and toxicity of the mold present, the effect it was having on her health, or the extent of the contamination." <u>Note</u> that this allegation points out both the mold and the moisture, but specifies the toxicity and health impact of the mold only.

(b) Paragraph 2.15: "It was over the course of these few days that plaintiff discovered that almost of all her belongings had been contaminated with mold…"

(c) Paragraph 2.18: "After moving to Washington, plaintiff underwent medical testing and consulted with a doctor who specializes in mold toxins' effect on the body. On November 17, 2021, plaintiff received the results of her medical testing, which identified toxins in her body… On August 2, 2022, plaintiff received a toxicology report which took into consideration all environmental and medical testing and established by a team of experts that the symptoms the plaintiff has been experiencing over the years have been caused by the toxic contaminants eventually found in the contaminated environment…"

(d) Paragraph 2.19: "As a result of this long-term mold exposure, plaintiff was exposed to degraded air quality and environmental poisoning that rendered the residence unfit for human habitation and cased plaintiff serious health concerns related herein."

(e) Paragraph 2.21: "Due to the inaction of defendants, plaintiff suffered mold exposure symptoms such as difficulty breathing, depression, cognitive impairment, and other respiratory illnesses. Furthermore, plaintiff suffered from multiple hernias due to abdominal tears caused by her constant violent coughing during the latter part of her tenancy, which plaintiff only recently learned was a symptom of the mold toxicity, and not plaintiff's pre-existing mild COPD."

(f) Paragraph 3.5: "Experts have recently opined that the long-term exposure to mold at 1115 ½ Pinecroft Avenue in Medford Oregon caused plaintiff to suffer environmental

poisoning, resulting in the severe and ongoing health issues plaintiff is suffering from."

(g) Paragraph 4.4: "When plaintiff's daughter finally was able to come up with the funds necessary to investigate the house, plaintiff finally learned of the presence of a variety of molds, including molds hazardous to human health. Until that point, plaintiff was only aware of the moisture intrusion and that some 'molds' had invaded the house. She did not know of the harmfulness of these molds until much later." <u>Note</u> that plaintiff was previously aware of both the moisture and mold intrusion, but now only alleges the mold to be harmful.

(h) Paragraph 5.3: "Defendants were negligent in one or more of the following ways, each of which was a substantial factor in causing the long-term mold exposure, proximately causing significant injuries to plaintiff:…" <u>Note</u> that it is not alleged that the acts or omissions committed by Defendants alone caused any harm to plaintiff, only that those acts or omissions gave rise to or failed to address the mold exposure, which itself was the proximate cause of plaintiff's injuries.

20.

The terms of the Policies, in each year under which coverage might be sought, are clear that there is no application to, and therefore no duty to defend, any injuries which would not have occurred, in whole or in part, but for the alleged existence of or exposure to mold. For coverage to exist and for the "Fungi or Bacteria" exclusion to not apply, the Underlying Complaint would have to allege some injury arising from an occurrence entirely separate from the mold exposure at issue.

21.

The only other *potential* cause of loss is the alleged moisture and water intrusion. However, it is not alleged, and factually cannot be alleged, that mere exposure to moisture or water was harmful to Underlying Plaintiff's health. Relatedly, it is clear that the damage to

Underlying Plaintiff's personal property was due to alleged mold exposure, *not* to water damage. *See* Paragraph 2.15, referenced above. To the extent that any other cause is alleged which could have caused Underlying Plaintiff to suffer "bodily injury" or "property damage," which is simply not the case, such cause clearly did not result in identifiable damage that would have occurred separate from or regardless of the existence of the mold.

22.

Therefore, based on the allegations contained in the Underlying Complaint, in conjunction with the "Fungi or Bacteria" Exclusion contained in each of the Policies, Penn-Star does not owe Defendant any duty to defend against the Underlying Complaint.

23.

Although Penn-Star has agreed to defend Defendants in the Underlying Lawsuit, Penn-Star reserved all its rights, including the right to withdraw from the defense at any time. Accordingly, and reserving the right to assert additional bases for the complete denial or limitation of any defense obligation to Defendants, Penn-Star is entitled to a declaration that it is not obligated to defend Defendants against the claims in the Underlying Lawsuit.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment – No Duty to Indemnify)**

24.

Penn-Star incorporates by reference the allegations in paragraphs 1-23.

25.

An actual controversy and dispute exists between Penn-Star and Defendants as to whether Penn-Star is relieved of its obligation to provide indemnity to Defendants against the claims in the Underlying Lawsuit pursuant to the "Fungi or Bacteria" Exclusion of the Policies.

/ / /

/ / /

/ / /

26.

Penn-Star has no duty to indemnify Defendants for sums that Defendants may become legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Policies do not apply.

27.

For the reasons stated in Penn-Star's First Claim for Relief, if Underlying Plaintiff can be awarded any damages in the Underlying Lawsuit, it will be based on the existence of and her exposure to "fungi," an excluded cause of loss. Therefore, Penn-Star can have no duty to indemnify Defendants in the Underlying Lawsuit.

28.

In the alternative, if Penn-Star does have any duty to indemnify Defendants, that duty must necessarily be limited to any damages which still *would* have taken place, in whole or in part, regardless of "the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any 'fungi' or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury."

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Penn-Star requests judgment in its favor and against defendants as follows:

1. A declaration that Penn-Star has no duty to defend Defendants with respect to the Underlying Lawsuit;

2. A declaration that Penn-Star has no duty to indemnify Defendants with respect to the Underlying Lawsuit;

3. Or, in the alternative to the second prayer for relief, a declaration that, if Penn-Star might have a duty to indemnify Defendants, that said duty is limited to indemnity for any damages which would have occurred regardless of the alleged mold exposure;

4. An award of all costs and expenses herein; and

5. For such other relief as this court deems appropriate.

DATED this 3rd Day of November, 2022.

Respectfully Submitted:

**GORDON & POLSCER, L.L.C.**

By: *s/ Brian C. Hickman*
   Brian C. Hickman, OSB No. 031096
   Email: bhickman@gordon-polscer.com

By: *s/ Joshua E. Tabak*
   Joshua E. Tabak, OSB No. 214668
   Email: jtabak@gordon-polscer.com

*Attorneys for Plaintiff*
*Penn-Star Insurance Company*